**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Michael A Nesbitt, II,<br><br>Plaintiff,<br><br>v.<br><br>City of Bullhead City, et al.,<br><br>Defendants. | No. CV-18-08354-PCT-DJH<br><br>**ORDER** |

Pending before the Court is Defendants' Joint Motion to Enforce Settlement Agreement and Award Attorneys' Fees (Doc. 54). Plaintiff has filed a Response (Doc. 57), and Defendants have filed a Reply (Doc. 58). The matter is fully briefed.

**I.  Background**

On March 27, 2020, Defendant City of Bullhead City ("Bullhead City") filed a Notice of Settlement saying that the parties anticipated dismissal of this action within thirty days. (Doc. 51 at 1). Three days later, Plaintiff Michael Nesbitt ("Mr. Nesbitt") filed a Motion to Strike arguing that the parties had not reached a settlement. (Doc. 52 at 1). Although counsel for Plaintiff, Elizabeth Tate ("Ms. Tate"), noted in her Motion that she anticipated filing a motion to withdraw as attorney of record for Plaintiff, the Court has not yet received any such motion. (*Id.*)

As alleged in the Complaint, Mr. Nesbitt worked for Bullhead City and was fired in retaliation for reporting his supervisor's various misdeeds. (Doc. 1 at ¶¶ 7, 27). The Complaint also alleges that the same supervisor, Defendant Donald Carley ("Mr. Carley"),

required Mr. Nesbitt to come to work fifteen minutes early for ten days, and that Mr. Nesbitt has not been paid for that extra time. (*Id.* at ¶¶ 14–15). The Complaint brings five claims under several minimum wage and anti-retaliation laws, which include violations of 42 U.S.C. § 1983; A.R.S. §§ 23-1501, 23-363, 23-364; and, importantly, the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq*. (Doc. 1 at 8–10). The named Defendants are Bullhead City, as well as Mr. Carley and his wife, Ms. Lisa Carley (together, "Mr. and Ms. Carley"). (*Id.* at 1).

Defendants argue this case has settled. (Doc. 54 at 2). They present an e-mail exchange containing a volley of settlement offers between Ms. Tate, Bullhead City counsel Aaron Arnson ("Mr. Arnson"), and counsel for Mr. and Ms. Carley, Catherine Bowman ("Ms. Bowman"). (Doc. 54-1). No party disputes the e-mails' authenticity. The exchange, which occurred from May 24 to May 27, 2020, is summarized as follows:

- After talking with Ms. Tate on the telephone, Mr. Arnson sent a follow-up e-mail rejecting Ms. Tate's oral offer to settle for $60,000 and counteroffering with "$17,500, in exchange for a full dismissal and global release of all claims." (*Id.* at 6).
- The parties then discussed; Ms. Tate lowered her offer to $37,500 and Mr. Arnson subsequently raised his offer to $22,500. (*Id.* at 4).
- Mr. Arnson then sent an e-mail to Ms. Tate saying that, after discussing with Ms. Bowman, "Still a counter of $22,500 with a dismissal of all claims against [Bullhead City]. However, [Mr. and Ms. Carley] would like to be dismissed by separate stipulation rather than be part of the settlement agreement." Mr. Arnson also noted that he included Ms. Bowman on the e-mail chain. (*Id.*)
- Ms. Bowman then wrote to Ms. Tate, "I hope you will consider dismissing [Mr. and Ms. Carley] out separately from the settlement." (*Id.*)
- Ms. Tate responded, "We counter at 35k." (*Id.*)
- Ms. Bowman then directly asked Ms. Tate if she would dismiss Mr. and Ms. Carley in a separate stipulation before the settlement. (*Id.* at 3).

- Ms. Tate responded, "I'm not sure we will settle. [Mr. Arnson] says global release." (*Id.*)
- Mr. Arnson responded, "If [Ms. Bowman] wants out by separate stipulation, I guess that's fine." He went on to say, "I have authority to split the difference at $28,750." (*Id.*)
- Ms. Tate then said, "My authority is 30k. Can we get the deal done?" (*Id.*)
- Mr. Arnson said that he was trying to reach a compromise by splitting the difference in the earlier offers, and he asked Ms. Tate to discuss with Mr. Nesbitt. (*Id.* at 2).
- Ms. Tate said they "may have a deal" and asked whether Mr. Nesbitt would be required to keep the settlement confidential. (*Id.*)
- Mr. Arnson said there was a confidentiality provision in his standard settlement form. He asked why Mr. Nesbitt wanted to disclose anything. (*Id.*)
- Ms. Tate responded that Mr. Nesbitt wanted to "go to the press with his findings." (*Id.*)
- Mr. Arnson responded, "All anyone should be saying about this case, both of our client [sic] included, is that it was resolved to the parties' mutual satisfaction." (*Id.*)
- Ms. Tate: "So his request is unreasonable? I'll tell him so." (*Id.*)
- Mr. Arnson: "It's just not something we're prepared to agree to. We should just be done with it." (*Id.*)
- Ms. Tate: "Ok." (*Id.*)
- The next day, March 27, Mr. Arnson wrote to Ms. Tate saying, "Please let me know where we stand." (*Id.*)
- Ms. Tate responded, at 12:48 P.M., "We accept. How long to get checks?" (*Id.*)
- At 3:26 P.M., Mr. Arnson e-mailed a confirmation of the settlement's terms. "This email confirms that this matter has settled at $28,750, subject to an execution of a settlement agreement and release of all claims. . . . As discussed,

- 3 -

the Carleys will be dismissed by separate stipulation of dismissal." (*Id.* at 14).[1]

- At 4:54 P.M., Ms. Tate responded, "[Mr. Nesbitt] would like to withdraw the agreement [sic]." (*Id.* at 13).
- Both Mr. Arnson and Ms. Bowman protested, arguing the withdrawal was ineffective because the parties had made a binding agreement. (*Id.* at 9–10).

Plaintiff's Response elucidates why Mr. Nesbitt wanted to withdraw. (Doc. 57 at 3). After Ms. Tate decided to "accept,"  Mr. Nesbitt "made it clear to [Ms. Tate] that he could not agree to certain non-monetary terms required for a settlement by Bullhead City, to-wit: a confidentiality requirement requested by Bullhead City and a non-disparagement clause also requested by Bullhead City. Mr. Nesmith [sic] also stated that he had determined that the sum of $28,750 was grossly insufficient and that he should not have been advised to accept the sum." (Doc. 57 at 3).

Defendants maintain that a binding settlement agreement was made and that this Court should enforce it, dismiss the case, and grant Defendants' reasonable attorneys' fees. (Doc. 54 at 2). In addition, Defendants argue that Ms. Tate has made several misrepresentations to the Court and should be ordered to show cause why sanctions should not be imposed. (Doc. 58 at 8). Plaintiff argues that the agreement was not actually binding, making withdrawal appropriate. (Doc. 57 at 1). The Court will begin by discussing the legal issues, and then it will consider attorneys' fees and sanctions.

## II. Discussion

State contract law governs whether the parties have reached a binding settlement agreement of their state and federal claims. *Wilcox v. Arpaio*, 753 F.3d 872, 876 (9th Cir. 2014). Here, the Court will look to Arizona law to determine whether a binding agreement exists. *See id.* If one does exist, "[i]t is well settled that a district court has the equitable power to enforce summarily an agreement to settle a case pending before it." *Callie v. Near*, 829 F.2d 888, 890 (9th Cir. 1987). However, this Court and others in this District have found that, "[u]]nlike most private settlements negotiated between parties in a civil

---

[1] Mr. Arnson filed the Notice of Settlement at 4:31 P.M., March 27, 2020. (Doc. 58-1 at 2).

action for damages, in a FLSA case or class action, the parties *must* seek the district court's approval of the settlement's terms to ensure that it is enforceable and fair." *Juvera v. Salcido*, 2013 WL 6628039, at *3 (D. Ariz. Dec. 17, 2013) (emphasis added) (citing, *inter alia*, *Nall v. Mal–Motels, Inc.*, 723 F.3d 1304, 1307 (11th Cir. 2013) (affirming the holding in *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350 (11th Cir. 1982)); *see Fontes v. Drywood Plus, Inc.*, 2013 WL 6228652, at *5 (D. Ariz. Dec. 2, 2013); *Lopez v. Arizona Public Service Co.*, 2010 WL 1403873, at *1 (D. Ariz. Jan. 27, 2010) (quoting *Lynn's Food*, 679 F.2d at 1352–53)). Courts may approve of FLSA settlements that "reflect a reasonable compromise over issues . . . that are actually in dispute." *Lynn's Food*, 679 F.2d at 1354.

Plaintiff correctly points out that the Court has not yet approved any settlement agreement, as is required for FLSA claims. (Doc. 57 at 12). This unusual posture raises a necessary question. What effect does a party's withdrawal during the gap between party agreement and judicial review have on FLSA settlements? The Court will address this question first. Second, the Court will assess whether the parties created a binding settlement agreement. And, third, the Court will determine whether the agreement is fair.

**A. Whether a Party May Withdraw from an Unreviewed FLSA Settlement Agreement**

In order to protect employees "from substandard wages and oppressive working hours," courts must approve FLSA settlement agreements before they are enforced. *Lynn's Food*, 679 F.2d at 1352. Employers and employees cannot usually negotiate or bargain on matters covered by the FLSA because the FLSA's provisions are mandatory, which helps balance the "often great inequalities in bargaining power between employers and employees." *Id.* (citing *Brooklyn Savings Bank v. O'Neil*, 324 U.S. 697, 706–07 (1945)). When an employee sues an employer for back wages, the parties may engage in settlement discussions because there is "some assurance of an adversarial context" that helps balance the parties' bargaining power. *Id.* at 1354. "Thus, when the parties submit a settlement to the court for approval, the settlement is more likely to reflect a reasonable compromise of disputed issues than a mere waiver of statutory rights brought about by an employer's overreaching." *Id.* In addition to protecting employees' rights, court review and approval

of reasonable compromises also promotes the FLSA's policy of encouraging settlement. *Id.*; *see also Franklin v. Kaypro Corp.*, 884 F.2d 1222, 1225 (9th Cir. 1989) (noting that federal courts have a general policy of promoting settlement before trial).

The requirement to review agreements aims to promote fairness, not to let parties escape legally enforceable promises. *See Lynn's Food*, 679 F.2d at 1354. A promise to settle would not be worth much if a party could renege at any time before judicial approval. Such uncertainty would frustrate the FLSA's policy of encouraging settlement. *See id.* In addition, courts regularly enforce settlement agreements that were binding when made but later renounced by a party. *See e.g., Doi v. Halekulani Corp.*, 276 F.3d 1131, 1136–40 (9th Cir. 2002) (finding a district court did not abuse its discretion by enforcing a settlement agreement reached orally in court but later rejected by a party); *Henderson v. Yard House Glendale*, LLC, 456 F. App'x 701 (9th Cir. 2011) (same); *Allen v. Barnes*, 329 F. App'x 740 (9th Cir. 2009) (finding no abuse of discretion when a district court enforced an agreement entered into by attorney with authority); *Benge v. Ryan*, 2017 WL 588706 at *3 (D. Ariz. Feb. 14, 2017) (enforcing a settlement agreement reached by counsel with authority but later repudiated by the client). Therefore, the Court finds that if parties agree to a binding FLSA settlement agreement, that agreement will remain until court approval or rejection. It follows that if a party agrees to a settlement and comes to find that the agreement is unfair, that party should explain to the court why it should reject the settlement.

**B. Whether a Binding Settlement Agreement Exists**

The Court will now determine whether the parties created a binding settlement agreement. "It is well settled in Arizona that: 'For an enforceable contract to exist, there must be an offer, an acceptance, consideration, and sufficient specification of terms so that obligations involved can be ascertained.'" *Contempo Const. Co. v. Mountain States Tel. & Tel. Co.*, 736 P.2d 13, 15 (Ariz. Ct. App. 1987) (quoting *Savoca Masonry Co., Inc. v. Homes & Son Constr. Co., Inc.*, 542 P.2d 817, 819 (Ariz. 1975)). Plaintiff argues there is no enforceable agreement because: (i) there was no valid acceptance in accordance with

this District's Local Rule 83.7; (ii) that the only agreed-upon term was the amount Bullhead City would pay; (iii) that Mr. and Ms. Carley were not included in the settlement terms and that there was no consideration on their behalf for the dismissal of the claims against them; and (iv) that Mr. Nesbitt promptly rejected the settlement confirmation sent by Bullhead City's counsel and withdrew. (Doc. 57 at 8–11).

*i.     Acceptance*

An acceptance is the manifestation of assent to the terms made by an offeree in the manner invited by the offeror. *Contempo Const. Co.*, 736 P.2d at 15 (citing Restatement (Second) of Contracts § 50 (Am. Law Inst. 1981)). Here, Ms. Tate told Defendants after an exchange of settlement offers, "We accept. How long to get checks?" (Doc. 54-1 at 2). This clearly manifests assent. But the argument made in Plaintiff's Response is that this acceptance is not valid pursuant to the Court's Local Rules. (Doc. 57 at 8). Local Rule 83.7 states that "[n]o agreement between parties or attorneys is binding, if disputed, unless it is in writing signed by the attorney of record . . . ." Plaintiff argues that the e-mail in which Ms. Tate wrote "We accept" was not signed because it has no signature. (Doc. 57 at 8). The e-mail in its entirety reads, "We accept. How long to get checks? Sent from my iPhone." (Doc. 54-1 at 2). Ms. Tate's name only appears in the "From:" line. (*Id.*)

As a reminder, "[d]istrict courts have broad discretion in interpreting and applying their local rules." *Miranda v. S. Pac. Transp. Co.*, 710 F.2d 516, 521 (9th Cir. 1983). One court in this District has previously held that electronic documents are considered signed for purposes of Local Rule 83.7 "if the document 'has affixed to it in some form the name of the [signatory] that evidences an intention of authentication.'" *Zalkow v. Taymor Indus. USA, Inc.*, 2015 WL 504368 *3 (D. Ariz. Aug. 27, 2015) (citing *Haywood Sec., Inc. v. Ehrlich*, 149 P.3d 738, 741 (Ariz. 2007)). Another court in this District has found that Local Rule 83.7 does not even apply when a party's actions implicitly concede the existence of a binding agreement. *Benge*, 2017 WL 588706 at *3. Ultimately, Local Rule 83.7's signature requirement serves to demonstrate an agreement's authenticity. Here, there is no dispute that the e-mails marked as sent from Ms. Tate's e-mail address are authentic.

1  (Docs. 54-1 at 2; 57 at 2). Therefore, the Court finds that the e-mail from Ms. Tate saying
2  "We accept" to the proposed settlement agreement is a signed and valid acceptance under
3  Arizona law and under Local Rule 83.7.

                ii.        *Terms of the Agreement*

5  An agreement's terms must be sufficiently specified so parties can ascertain the
6  obligations involved. *Contempo Const. Co.*, 736 P.2d at 15. In addition, "the parties must
7  mutually consent to all material terms." *Hill-Shafer P'ship v. Chilson Fam. Tr.*, 799 P.2d
8  810, 814 (Ariz. 1990). When parties intend to be bound by an agreement, even though
9  some terms remain to be discussed, the law favors enforcement. *AROK Const. Co. v. Indian
10 Const. Servs.*, 848 P.2d 870, 876 (Ariz. Ct. App. 1992) (citing Restatement (Second) of
11 Contracts § 33 (Am. Law Inst. 1981)). Plaintiff argues that the agreement misses material
12 terms because "[o]nly the sum to be paid by one of the Defendants was ever 'settled.'"
13 (Doc. 57 at 9).

14 To begin, the e-mails make clear that the sum was not the *only* point of agreement;
15 obviously, the parties also settled on a global release of all claims. (Doc. 54-1 at 3). In any
16 event, Plaintiff argues that the parties never agreed upon whether the settlement would
17 contain a confidentiality provision. (Doc. 57 at 9). But the e-mails show that when Bullhead
18 City said it was not prepared to let Mr. Nesbitt go to the press, Ms. Tate responded, "Ok."
19 (Doc. 54-1 at 2). The Court finds that confidentiality was a contemplated and accepted
20 term.

21 Plaintiff continues to argue that "nothing was determined as to when payment might
22 be made and how the sum would be treated for income tax and withholding purposes,
23 including what amount was for attorneys' fees." (Doc. 57 at 9). Plaintiff implies that these
24 are material terms to the contract. They are not. An agreement's terms must be sufficiently
25 specified so parties can ascertain their obligations; they need not be perfectly specified. *See
26 Contempo Const. Co.*, 736 P.2d at 15; *AROK Const. Co.*, 848 P.2d at 876. Here, Plaintiff
27 assented to a global release of all claims and a confidentiality agreement in exchange for
28 $28,750. (Doc. 54-1 at 2). One can plainly ascertain Defendants' obligation to pay that

sum, and so the term is sufficiently specified.

### iii. Mr. and Ms. Carley

Plaintiff argues that Mr. and Ms. Carley "were not a party to the settlement negotiations nor was the disposition of the Nesbitt's claims against them ever agreed upon in the negotiations between [Mr. Nesbitt] and Bullhead City." (Doc. 57 at 4). This is simply not true. Ms. Bowman, counsel to Mr. and Ms. Carley, was included in the e-mails and even participated in them, agreeing to the global release of all claims on the condition that Mr. and Ms. Carley be dismissed in a separate stipulation. (Doc. 54-1 at 3).

Plaintiff also argues "[t]here was never any agreement or understanding as to Mr. Nesbitt's claims against [Mr. and Ms. Carley], nor did they ever offer any consideration in order to get a dismissal of the claims against them . . . ." (Doc. 57 at 10). Valid contracts require parties to exchange mutual promises to perform, and this performance is consideration. *Carrol v. Lee*, 712 P.2d 923, 926 (Ariz. 1986) (citing Restatement (Second) of Contracts § 72 (Am. Law Inst. 1981). "[C]ourts do not ordinarily inquire into the adequacy of consideration." *Id.* Mr. and Ms. Carley promised to abide by the terms of the settlement agreement, which, for example, included a confidentiality provision. (Doc. 54-1 at 9). This constitutes sufficient consideration.

### iv. Rejection and Withdrawal

Plaintiff argues that because Ms. Tate "promptly" rejected Mr. Arnson's "request . . . to confirm the monetary provision of the settlement" there was no agreement. (Doc. 57 at 10–11). But Mr. Arnson's e-mail was not a request. Mr. Arnson's e-mail asks for nothing. It simply restates the basic terms of an agreement made a few hours prior and outlines the parties' next steps to dismiss the case. (Doc. 54-1 at 11). Mr. Arnson then filed the Notice of Settlement. (Doc. 58-1). Only after Mr. Arnson sent his confirmation e-mail and filed the Notice of Settlement did Ms. Tate write that her client would like to withdraw from the agreement. (Docs. 54-1 at 10; 58-1 at 2). As Ms. Tate's e-mail confirmed, an agreement had already been reached. After Ms. Tate's several representations of authority to settle and explicit assent to the settlement agreement, the subsequent attempt to withdraw

is ineffective. *See Miller v. Mason-McDuffie Co. of S. Cal.*, 739 P.2d 806, 811 (Ariz. 1987) (holding that a principal is liable for an agent's acts if a third party reasonably relies on the agent's apparent authority).

Ultimately, the Court finds that a binding settlement agreement was created whereby: (1) the parties would agree to a global release of all claims with (2) a confidentiality provision, (3) Mr. and Ms. Carley would be dismissed by separate stipulation of dismissal, and finally (4) Plaintiff would receive $28,750.

### C. Whether the Settlement Agreement is Reasonable and Fair

The Court will now review this agreement for fairness, as it is required to do for FLSA settlements. *See Lynn's Food*, 679 F.2d at 1354. "If a settlement in an employee FLSA suit does reflect a reasonable compromise over issues, such as FLSA coverage or computation of back wages, that are actually in dispute" the district court may approve the settlement. *Id.*

For perspective, the FLSA violation, as alleged in the Complaint, concerns alleged failure to pay minimum wage and subsequent retaliation after Mr. Nesbitt protested. (Doc. 1 at 9). Specifically, the Complaint alleges that Mr. Carley required Mr. Nesbitt to arrive fifteen minutes early to work for ten days. (*Id.* at ¶¶ 14–15). Mr. Nesbitt's alleged hourly rate was $13.50. (*Id.* at ¶ 15). By the Court's calculations, the ten instances when Mr. Nesbitt arrived fifteen minutes early amount to two and a half hours of work. If paid, the FLSA's minimum wage of $7.25 an hour, Mr. Nesbitt would have earned about $18.13 over those ten days. *See* 29 U.S.C. § 206(a)(1)(C). If paid his alleged hourly wage, Mr. Nesbitt would have earned $33.75.

Nothing in Plaintiff's briefing argues that the agreement reached by the parties is unfair. Upon its own review, and in consideration of all the Plaintiff's claims, the Court finds that the terms of the settlement agreement, as described above, are fair and reasonable. *See Lynn's Food*, 679 F.2d at 1353. Furthermore, the Court finds that the settlement does not undermine the FLSA's "purpose of protecting workers from substandard wages and *oppressive* working hours." *Id.* at 1352 (emphasis added) (citing

*Barrentine v. Arkansas-Best Freight Sys., Inc.*, 450 U.S. 728, 739 (1981)). Therefore, the Court approves of the parties' settlement agreement and will enforce it.

### III.    Attorneys' Fees and Sanctions

Defendants request an award of reasonable attorneys' fees incurred in their efforts to enforce the settlement agreement. (Doc. 54 at 5). Under A.R.S. § 12-341.01, a court may award the successful party reasonable attorney fees for any contested action arising out of a contract. Ms. Tate argues that attorney's fees are not available under this provision because there is no underlying contract claim in this case. For authority, Ms. Tate cites *Bryant v. Bloch Companies*, a case in which no complaint was ever filed and so no action ever began. 800 P.2d 33, 36 (Ariz. Ct. App. 1990). *Bryant* is inapposite. Motions to enforce settlement agreements are treated as contested contracts for purposes of A.R.S. § 12-341.01. *Hays v. Fischer*, 777 P.2d 222, 230 (Ariz. Ct. App. 1989).

Defendants also request sanctions against Ms. Tate for three alleged misrepresentations either on the Court's initiative or pursuant to 28 U.S.C. § 1927. (Doc. 58 at 11). First, they allege Ms. Tate misrepresented the order of events to make it seem as though Mr. Arnson filed the Notice of Settlement with the Court after she had attempted to withdraw from the agreement. (*Id.*) This is the statement at issue:

> Later that same day, the undersigned sent Mr. Arnson an e-mail telling him that Mr. Nesbitt did not agree to the "settlement", [sic] but Mr. Arnson insisted that there had been an enforceable settlement executed, and he filed his "Notice of Settlement" later on that same day, March 27, 2020. (Doc. 57 at 3).

Ms. Tate did not attempt to withdraw until after the Notice of Settlement was filed. (Docs. 54-1 at 13; 58-1 at 2). Ms. Tate's statement misrepresents the actual order of events. Ms. Tate accepted the settlement terms at 12:48 P.M.; Mr. Arnson sent a confirmation e-mail at 3:26 P.M.; Mr. Arnson filed the Notice of Settlement at 4:31 P.M.; and then, at 4:54 P.M., Ms. Tate emailed notice that her client would like to withdraw. (Docs. 54-1 at 1, 13–14; 58-1 at 2).

Second, Defendants allege that Ms. Tate's argument, that Mr. and Ms. Carley were not included in the settlement discussions, is a misrepresentation of the e-mail discussions.

(Doc. 58 at 9). The e-mails plainly show Ms. Bowman, counsel for Mr. and Ms. Carley, participated in the discussion. (Doc. 54-1 at 3). Ms. Tate's statements misrepresent who participated in the discussion.

Lastly, Defendants allege that Ms. Tate's contention that Mr. and Ms. Carley lacked consideration in the agreement is another misrepresentation. (Doc. 58 at 9). While perhaps not a misrepresentation of fact, it is an undercooked legal argument, one of several found throughout Ms. Tate's briefing.

Overall, the record shows Ms. Tate fully committed to a settlement agreement, and then her client expressed discontent. It seems that she is now mispresenting facts and making spurious legal claims in an attempt to repudiate the agreement. Of particular concern to the Court are Ms. Tate's factual representations that Mr. Arnson filed the Notice of Settlement after Ms. Tate's attempted withdrawal and that Mr. and Ms. Carley were not represented in the settlement discussions. Ms. Tate's actions lack candor to the Court and have caused unnecessary delay in this case. *See* Fed. R. Civ. P. 11(b)(1).

Accordingly,

**IT IS HEREBY ORDERED** that Defendants' Motion to Enforce Settlement Agreement (Doc. 54) is **GRANTED**.

**IT IS FURTHER ORDERED** that the terms of the settlement reached among counsel of record as put forth herein are hereby enforced.

**IT IS FURTHER ORDERED** that Defendants may file a motion in support of their request for fees and proposing a reasonable fee pursuant to A.R.S. § 12-341.01 within 14 days of this Order. Any response or reply must comply with Local and Federal Rules.

**IT IS FURTHER ORDERED** that Plaintiff shall show cause in writing, within 14 days of this Order, as to why sanctions should not be imposed for the misrepresentations and legal claims described herein.

…

…

…

**IT IS FINALLY ORDERED** that this case is hereby dismissed and the Clerk of the Court is respectfully directed to close this case.

Dated this 23rd day of October, 2020.

Honorable Diane J. Humetewa
United States District Judge